[No. 15000.  Department Two.  December 31, 1918.]

## STATE BANK OF BLACK DIAMOND, *Respondent,* v. H. JOHNSON *et al., Appellants.*[1]

SALES (179-1)—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT—
EFFECT. The vendor in a conditional sales contract reserving the
title until the contract price was fully paid, may sell and transfer
its title, and the intention to do so is manifested by a written
indorsement on the bill of sale transferring all the vendor's right,
title and interest in and to the within note and conditional bill
of sale.

SAME (179-1, 182) — ASSIGNMENT OF CONTRACT — REMEDIES OF
SELLER—ELECTION. Where a conditional sales contract retaining
title in the vendor embodied a promissory note for the balance due,
all as part of one instrument, an assignment of the conditional
bill of sale and note guaranteeing its payment and fulfillment,
merely renders the assignor liable as a guarantor should the as-
signee elect to seek recovery of the balance of the debt, and does
not constitute an election that would vest title to the article sold
in the conditional sales vendee.

SAME. After assignment of a conditional sales contract of an
automobile, surrender by the vendee to the vendor with notice of
the assignment, vests no title in the vendor, who can convey no
title to an innocent purchaser, regardless of the fact that there
was no constructive notice of the assignment under the recording
laws; since the buyer acquires no title where the seller had none.

SAME (96-99)—RIGHTS OF BUYERS AS TO THIRD PERSONS—TITLE—
INNOCENT PURCHASERS. Since the doctrine of sale in market overt
does not obtain in this country, a buyer of an automobile from a
dealer in possession acquires no rights as an innocent purchaser
from one in possession with apparent title, where the dealer had
previously sold it under a conditional sales contract reserving title,
and had assigned the contract of sale with all title to the property,
and the conditional sales vendee surrendered the automobile to
the vendor.

Appeal from a judgment of the superior court for
King county, Hall, J., entered April 12, 1918, upon
findings in favor of the plaintiff, in an action of re-
plevin, tried to the court. Affirmed.

[1]Reported in 177 Pac. 340.

*Kerr & McCord,* for appellants.

*Karr & Gregory* and *H. G. Sutton,* for respondent.

PARKER, J.—This is a replevin action wherein the plaintiff bank seeks recovery of an automobile, claiming title to the same by virtue of a conditional sale contract therefor, executed by Grant-Coffin-Campbell Company, as vendor, an assignment of all the rights of that company under the conditional sale contract, and forfeiture of the vendee's rights thereunder. The defendants, Johnson and Dahl, claim lawful possession and title to the automobile as innocent purchasers for value. Trial in the superior court for King county, sitting without a jury, resulted in findings and judgment in favor of the plaintiff, from which the defendants have appealed to this court.

On September 17, 1917, Grant-Coffin-Campbell Company, then being the owner and in possession of the automobile, entered into a conditional sale contract with A. L. Skonnord, looking to the transfer of the title to the automobile to Skonnord, which contract, in so far as we need notice its terms, reads as follows:

"Know All Men by These Presents:

"That Grant-Coffin-Campbell Co., a corporation, of Seattle, Wash., the vendor, on the seventeenth day of September, 1917, delivered to A. L. Skonnord, residing at Seattle, in King county, state of Washington, the vendee, personal property, described as:

"One Grant Six, Model 'K,' Touring Car No. 23494, engine No. 1813, with full equipment thereon, under contract of conditional sale on these terms and conditions at the price of $887.50.

"Said property is and shall remain the absolute property of the vendor, or its assigns, until the full payment of the purchase price or of any judgment therefor. . . .

"The vendee has paid to the vendor on account of the purchase price the sum of $287.50, and the balance,

to wit; $600 is evidenced by the following promissory note, which is accepted as additional evidence of indebtedness and not as payment, viz.:

"Seattle, Wash., Sept. 17, 1917.

"For value received, I promise to pay to Grant-Coffin,Campbell Co. or order, Six Hundred . . . Dollars, in gold coin of the United States of America, with interest thereon in like gold coin at the rate of eight per cent per annum from date until paid, payable in twelve installments of not less than $50 in any one payment, together with the full amount of interest due on this note at the time of payment of each installment. The first payment to be made on the 17th day of October, 1917, and a like payment on the 17th day of each month thereafter, until the whole sum, principal and interest, has been paid, if any of said installments are not so paid, the whole sum of both principal and interest to become immediately due and collectible at the option of the holder hereof. . . .           A. L. Skonnord."

"The vendor may at any time sell or assign its interest in the property, including said note and insurance, to any person, and such transferee shall have the same rights hereunder as the vendor.

"Time is of the essence of this contract. If the vendee shall make default in the payment of said note, or any installment thereof, principal or interest, as and when the same shall become due . . . or sell or attempt to sell, or encumber, said property . . . it shall be optional with the vendor to (1) declare this contract forfeited and determined and take possession of said property with or without process of law, and retain all sums paid by the vendee, as and for rent, for the use of said property, or (2) to declare the whole unpaid sum of said note, with interest immediately due and collectible. . . .

"A. L. Skonnord, Vendee.
"Grant-Coffin-Campbell Co.
"By Edw. P. Campbell, Pres., Vendor.

On the date of the execution of the conditional sale contract, the rights of Grant-Coffin-Campbell Com-

pany thereunder were duly assigned by it to respondent bank by indorsement on the back thereof, as follows:

"For value received I hereby sell, assign and transfer to State Bank of Black Diamond all my right, title and interest in and to the within note and memorandum of conditional bill of sale, and I hereby guarantee the payment and fulfillment of the within contract at the time and in the manner therein stated.  .  .  .
                    "Grant-Coffin-Campbell Co.
                "By Edw. P. Campbell, Pres."

This assignment was made in consummation of an outright sale to the bank of all the rights of Grant-Coffin-Campbell Company under the contract, and not as collateral or security. Thereafter, on the day following, the conditional sale contract, with the assignment so indorsed thereon, was filed in the office of the auditor of King county, as it is claimed, in pursuance of the provisions of §§ 3670, 3671, Rem. Code. A few days after, October 17, 1917, the date on which the first deferred installment of the purchase price under the conditional sale contract became due, Skonnord, being unable or unwilling to pay any portion of the balance of the purchase price, returned the automobile to Grant-Coffin-Campbell Company. Thereafter, on October 25, 1917, appellants, Johnson and Dahl, entered into a contract with Grant-Coffin-Campbell Company for the purchase of a second-hand automobile of the same general description as that described in the conditional sale contract, although not specifically describing that automobile, for an agreed price of $600, paying $20 down thereon. On the following day, Edw. P. Campbell, of Grant-Coffin-Campbell Company delivered the automobile mentioned in the conditional sale contract and which had been returned to Grant-Coffin-Campbell Company, evidently in compliance

with the contract made between that company and
Johnson and Dahl the day previous, executing a bill
of sale therefor to Johnson and Dahl in the name of
"Campbell Motor Car Company, by Edw. P. Camp-
bell, President." Johnson and Dahl then paid to
Campbell the balance of the $600 agreed purchase
price. It appears that there was no such corporation
or concern as the "Campbell Motor Car Company."

On about November 1, 1917, Mr. Karr, attorney for
the bank, called Campbell's attention to the fact that
Skonnord had failed to pay the $50 installment falling
due under the conditional sale contract on October 17,
1917. Thereupon Campbell informed Karr that he,
Campbell, had promised Skonnord that he would take
care of the payment for Skonnord. Whereupon Camp-
bell then paid to Karr, for respondent, the sum of $106,
being the installments and interest falling due Octo-
ber 17 and November 17, 1917. Thereafter, about
December 1, 1917, the officers of the bank learned for
the first time that the automobile had been returned
by Skonnord to Grant-Coffin-Campbell Company, and
that Campbell had assumed to sell and dispose of it
to someone. As soon thereafter as the officers of the
bank were able to discover that Johnson and Dahl were
the persons to whom Campbell had assumed to sell and
deliver the automobile, they immediately notified John-
son and Dahl that the bank was the owner of the auto-
mobile under the conditional sale contract and the as-
signment thereof and demanded possession of the au-
tomobile from them. They refused to deliver posses-
sion of the automobile to the bank, and also refused to
pay the installment maturing December 17, 1917, then
past due, under the provisions of the conditional sale
contract. Thereafter, on December 19, 1917, this ac-
tion was commenced by the bank, seeking recovery of
the automobile. Upon the filing of the conditional

sale contract in the office of the county auditor of King county, it was duly indexed, both direct and inverted, as to grantor and grantee, that is, as to Grant-Coffin-Campbell Company and Skonnord, and in connection therewith, at each of the two places so indexed, a notation was made in red ink as follows: "Assigned to the State Bank of Black Diamond." The facts so far related by us are either admitted or appear in the record uncontroverted. The trial court found, however, touching the question of the knowledge of Johnson and Dahl of the bank's claim of title to the automobile, as follows:

"That the defendants herein, and each of them, prior to taking possession of said automobile or paying any money therefor, either knew, or could by the exercise of reasonable diligence have known, that the plaintiff herein was the owner of said automobile under and by virtue of the said memorandum of conditional sale, and that they were not bona fide purchasers thereof without notice."

It is first contended by appellants, Johnson and Dahl, that respondent bank did not acquire the legal title to the automobile by the assignment of the interest of Grant-Coffin-Campbell Company in the note and conditional sale contract; and that the assignment became, in effect, an election on the part of both parties thereto to vest title to the automobile in Skonnord and thereafter to look to him only as a debtor owing the balance of the purchase price therefor. It seems plain that, since the legal title to the automobile remained in Grant-Coffin-Campbell Company by the express terms of the conditional sale contract, there was no legal impediment to that company transferring its title to the automobile to the bank, subject, of course, to Skonnord's right to perfect his title by the payment of the balance due upon the purchase

price as against the bank, as well as against Grant-Coffin-Campbell Company. So it becomes a question of the intention of Grant-Coffin-Campbell Company and the bank to be gathered from the terms of the assignment. We have seen that the assignment transferred to the bank all "right, title and interest" of Grant-Coffin-Campbell Company "in and to the within note and memorandum of conditional bill of sale." Now, that company possessed, under the conditional sale contract, two alternative rights: (1) The right to retake the automobile upon the failure of Skonnord to comply with the terms of the conditional sale contract; and (2) the right to look to Skonnord as a debtor owing the balance of the purchase price. We are quite unable to view the language of this assignment other than as evidencing an intent on the part of both Grant-Coffin-Campbell Company and the bank to transfer to the bank both of these alternative rights, either of which the bank could elect to claim, as Grant-Coffin-Campbell Company could have done had no assignment been made. It is true the assignment guaranteed "the payment and fulfillment of the within contract," but these words, as we view them, had no other effect than to render Grant-Coffin-Campbell Company liable as a guarantor, not only for the payment of the balance due upon the purchase price, should the bank elect to seek recovery of such balance as a debt, but also as a guarantor of the return of the automobile, should the bank elect to claim that right upon the failure of Skonnord to pay the balance of the purchase price.

Counsel rely principally upon our decisions in *Winton Motor Carriage Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71, in support of their contention that there was, by the assignment, an election on the part of both parties

thereto to look to Skonnord as a debtor only and to vest title to the automobile in him. In that case, however, there was involved an assignment, by indorsement, of a simple promissory note given by the vendee to the vendor to evidence the purchase price of a conditional sale contract. The note was an entirely separate instrument from the contract of sale. It did not, upon its face, make any reference to the contract, nor did the contract make any reference to the note. The transfer of the note was only a transfer of the right to look to the vendee as a debtor. This, we held, constituted an election to vest title to the property in the vendee and thereafter to look to him only as a debtor. Had the note and conditional sale contract there involved been embodied in one instrument and all the rights thereunder assigned, as in this case, we think the conclusion reached in that case would have been different. In *Barbour v. Hodge,* 99 Wash. 578, 170 Pac. 115, observations were made in harmony with this view, though the question was but very briefly noticed therein. In the following decisions, each involving the assignment of a promissory note and conditional sale contract embodied in one writing, similar to the one here involved, it was held that the assignment of such note and contract and of the interest of the assignor thereunder, though the assignment did not in terms refer to the property, effected a transfer of the reserved legal title to the assignee. *Myres v. Yaple,* 60 Mich. 339, 27 N. W. 536; *Barton v. Groseclose,* 11 Idaho 227, 81 Pac. 623; *Lazarovitch v. Tatilbum,* 103 Me. 285, 69 Atl. 275; *Bank of Little Rock v. Collins,* 66 Ark. 240, 50 S. W. 694.

We are quite convinced that the assignment by Grant-Coffin-Campbell Company of all its "title and interest in and to" the note and conditional sale con-

tract vested the reserved title to the automobile in the bank.

It is further contended by counsel for Johnson and Dahl that they are, in any event, innocent purchasers of the automobile for value, from one having possession and apparent title thereto, and that they should now be protected as against the claim of the bank. It is argued that the filing of the conditional sale contract and assignment indorsed thereon in the auditor's office did not give to Johnson and Dahl any constructive notice of the bank's title to the automobile, nor even of the title of Grant-Coffin-Campbell Company prior to the execution of the assignment; and also that they had no actual knowledge of any facts putting them upon inquiry or requiring them to take notice of the bank's title to the automobile, nor the claim of title of any one thereto other than Grant-Coffin-Campbell Company, the Campbell Motor Car Company or Edward P. Campbell, from one or the other of whom it may be said they purchased the automobile. It may well be argued that Johnson and Dahl had no constructive notice under the filing and recording provisions of our conditional sale contract statute, Rem. Code, §§ 3670, 3671, since that statute makes no provision for the filing, recording or indexing of assignments of this nature, and it is not claimed that the assignment was recorded or indexed as a bill of sale under Rem. Code, § 5291. It may also well be argued that, since neither Grant-Coffin-Campbell Company, Campbell Motor Car Company, nor Edward P. Campbell were holding the automobile as a vendee under a conditional sale contract, there was no occasion for Johnson and Dahl to look to the files or index of conditional sale contracts to learn what interest of that nature might be claimed by either of those parties. Our decisions in: *Howard v. Shaw*, 10 Wash.

151, 38 Pac. 746; *Fischer v. Woodruff*, 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742; *Dial v. Inland Logging Co.*, 52 Wash. 81, 100 Pac. 157, might be cited in support of such argument. However, we shall assume, rather than here decide, that Johnson and Dahl had no constructive notice, under the recording provisions of our conditional sale contract statutes, of any claim of title on the part of the bank.

The finding of the trial court, above quoted, that Johnson and Dahl knew, or could by the exercise of reasonable diligence have known, of the bank's claim of title when they purchased the automobile, which finding, we assume, relates to notice apart from constructive notice under the recording provisions of the statute, is challenged by counsel for Johnson and Dahl as not being supported by the evidence. A review of the evidence leaves us in considerable doubt as to the correctness of this finding. However, let us concede that Johnson and Dahl had no such knowledge as would put them upon inquiry leading to their discovering the bank's claim of title, in what position do we find them? Simply this, they purchased the automobile from one who had no title whatever therein. They acquired no more title or interest in the automobile when they purchased it from Grant-Coffin-Campbell Company, Campbell Motor Car Company, or Edward P. Campbell than as if they had purchased it from one who had stolen it; in which event, of course, they would have acquired no title whatever as against that real owner.

Some contention is made rested upon the fact that Grant-Coffin-Campbell Company was a corporation engaged principally in the sale of automobiles, and that the automobile was purchased by Johnson and Dahl at its place of business, it being then in posses-

sion and the apparent owner of the automobile. It is true that possession of personal property is some evidence of title thereto by the one in possession of it; but, in order to sustain Johnson and Dahl's claim of title in this case, it would be necessary to go to the extent in invoking in their favor the doctrine that a sale in *market overt* vests good title in the vendee though the vendor had no title, applicable under certain conditions in England, but not recognized as the law in this country. 35 Cyc. 358; 2 Bouvier's Law Dictionary (Rawle's 3d Revision), 2095. If the vendor has no title, the vendee acquires none; unless the one having title has by act or neglect estopped himself from disputing the vendee's claim of title so acquired. It seems plain there is no such estoppel here.

Some contention is made in behalf of Johnson and Dahl rested upon the theory that Skonnord returned the automobile to Grant-Coffin-Campbell Company in satisfaction of all claims against him under the conditional sale contract, resulting in the title to the automobile remaining in that company by agreement between it and him at a time when he had no notice that the rights of Grant-Coffin-Campbell Company under the conditional sale contract had been assigned to the bank. The record convinces us that, when Skonnord returned the automobile to Grant-Coffin-Campbell Company he was advised that the note and conditional sale contract had been assigned by that company to the bank. One of the express terms of the conditional sale contract is that ''The vendor may at any time sell or assign its interest in the property . . . to any person and such transferee shall have the same rights hereunder as the vendor.'' This plainly suggested the possibility of an assignment, and the evidence in the record tends strongly to show that, when

the automobile was returned by Skonnord, Campbell then promised him to pay the balance due upon the contract to the bank, to the end that he, Skonnord, might be relieved from further obligation under the contract. But even if the facts were as claimed by counsel for Johnson and Dahl touching the question of Skonnord's want of notice of the assignment, the fact still remains that neither Grant-Coffin-Campbell Company, Campbell Motor Car Company, nor Edward P. Campbell had any right, title or interest whatever in the automobile at the time one or the other of them assumed to sell it to Johnson and Dahl. Whatever view may be taken of any branch of this case, other than of the question of the bank acquiring title to the automobile by assignment of the conditional sale contract, there remains the fact that Johnson and Dahl's vendor had no title to convey, and the want of estoppel preventing the bank from asserting its title to the automobile.

The judgment is affirmed.

MAIN, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.